**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMMY J. LAMBERT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-657** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.      Introduction**

Plaintiff Tammy J. Lambert ("Plaintiff") brings this action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), seeking review of the final determination of the Commissioner of Social

Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act

("Act").  Consistent with the customary practice in the Western District of Pennsylvania, the

parties have filed cross-motions for summary judgment on the record developed during the

administrative proceedings.  Doc. Nos. 10 & 12.

After careful consideration of the Commissioner's decision, the memoranda of the

parties, and the entire record, the Court finds that the Commissioner's decision must be vacated,

and that the case must be remanded for further administrative proceedings pursuant to the fourth

sentence of § 405(g).  Therefore, the Court will deny the Commissioner's motion for summary

judgment, deny Plaintiff's motion for summary judgment insofar as it seeks an award of benefits,

grant Plaintiff's motion for summary judgment insofar as it seeks a remand for further

administrative proceedings, and remand the case for further proceedings before the Commissioner.

## II.    Procedural History

Plaintiff applied for DIB and SSI on July 18, 2005, alleging disability as of December 24, 2004, due to depression, bipolar disorder, anxiety, fibromyalgia, bilateral hip arthritis, Lyme disease, bursitis, Barrett's esophagitis, and degenerative disc disease.  R. 16, 41-45, 57-58, 396-398.  Her SSI application was apparently denied on October 26, 2005, because of her failure to supply evidence, but it was subsequently reopened on November 16, 2005, pursuant to a renewed SSI application which included the evidence which had previously been omitted.  R. 16.  Both the DIB and SSI applications were processed with the concurrent filing date of July 18, 2005.  *Id.* The claims were initially denied on February 27, 2006.  R. 34, 400.  Plaintiff filed a request for an administrative hearing on April 3, 2006.  R. 39.  On November 21, 2006, a hearing was held in Latrobe, Pennsylvania, before Administrative Law Judge Patricia Henry (the "ALJ").  R. 410. Plaintiff, who was represented by counsel, appeared and testified at the hearing.  R. 414-441. Mark Heckman ("Heckman"), an impartial vocational expert, also testified at the hearing.  R. 441-444.

In a decision dated December 27, 2006, the ALJ denied Plaintiff's claims for DIB and SSI.  R. 13-26.  After noting that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, the ALJ observed that Plaintiff suffered from degenerative disc disease of the cervical spine, fibromyalgia, borderline personality disorder, major depressive disorder, bipolar disorder, Lyme disease, Barrett's esophagitis and substance abuse.  R. 19.  Plaintiff's degenerative disc disease of the cervical spine, fibromyalgia, borderline personality disorder,

major depressive disorder and bipolar disorder were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). *Id.* Her Lyme disease, Barrett's esophagitis and substance abuse were not deemed to be severe. *Id.* The ALJ concluded that Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listing of Impairments"). *Id.* In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following determination with respect to Plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to engage in a range of light work, as that term is defined in the regulations, that is limited to no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment; involves only simple, work related decisions; in general, relatively few work place changes; and is limited to occasional interaction with supervisors, coworkers or the public.

*Id.* At the time of the ALJ's decision, Plaintiff was forty-four years old, making her a "younger person" under 20 C.F.R. §§ 404.1563 and 416.963. R. 24. She had the equivalent of a high school education and was able to communicate in English.[1] *Id.* Based on the applicable vocational and residual functional capacity assessments, the ALJ concluded that Plaintiff could not return to her past relevant work as a receptionist, cabinet maker, waitress, carpenter, laborer or telemarketer. *Id.* Nevertheless, it was determined that Plaintiff could work as a routing clerk, a coupon redemption clerk, a patch worker, a charge account clerk, an ampule sealer, or a nut sorter. R. 25. Heckman's testimony established that these jobs existed in the national economy

---

[1]At the hearing, Plaintiff testified that the ninth grade was the highest grade level that she had completed. R. 414. Nevertheless, she also testified that she had ultimately obtained a General Educational Development ("GED") certificate. *Id.*

for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. 442-444. Hence, Plaintiff was not found to be "disabled" within the meaning of the Act. *Id.*

The Appeals Council denied Plaintiff's request for review on March 26, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 6. Plaintiff commenced this action on May 15, 2008, seeking judicial review of the Commissioner's decision. Doc. No. 1. The parties filed cross-motions for summary judgment on October 15, 2008. Doc. Nos. 10 & 12. These motions are the subject of this memorandum opinion.

## III.   Statement of the Case

In her decision, the ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2.   The claimant has not engaged in substantial gainful activity since December 24, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.   The claimant has the following medically determinable "severe" impairments: degenerative disc disease of the cervical spine, fibromyalgia, borderline personality disorder, major depressive disorder and bipolar disorder. The claimant's substance abuse, in early remission; Lyme disease and Barrett's esophagitis are not "severe" (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in Listings 1.00 Musculoskeletal System or 12.00 Mental Disorders, or any other impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to engage in a range of light work, as that term is defined in the regulations, that is limited to no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment; involves only simple, work related decisions; in general, relatively few work place changes; and is limited to occasional interaction with supervisors, coworkers or

the public.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on September 6, 1962 and was 42 years of age on December 24, 2004.  She is currently 44 years of age.  This is defined as a younger individual (20 CFR 404.1563 and 416.963).

8.      The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      The claimant does not have any skills that could be transferred to other types of work within her residual functional capacity (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a "disability," as defined in the Social Security Act, from December 24, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 18-25.  Plaintiff argues that the ALJ erred in determining that her impairments did not meet or medically equal an impairment found in the Listing of Impairments, that the ALJ erred in determining that her Lyme disease and Barrett's esophagitis were not severe impairments, that the ALJ's residual functional capacity assessment was not supported by substantial evidence, and that the Commissioner did not meet his burden of establishing the existence of jobs in the national economy consistent with the applicable vocational and residual functional capacity assessments.

**IV.    Standards of Review**

Judicial review of  the Commissioner's final decisions on disability claims is

provided by statute. 42 U.S.C. §§ 405(g)[2] and 1383(c)(3)[3]. Section 405(g) permits a district

court to review transcripts and records upon which a determination of the Commissioner is

based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding

Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the

standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income,

or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. §

423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).

*Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d

Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v.

Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

---

[2] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[3] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of

the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

In *step one*, the Commissioner must determine whether the claimant is

8

currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[4] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. §

---

[4]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective

medical evidence.  *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993);  *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the

individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation

or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
> must provide some explanation for a rejection of probative evidence which
> would suggest a contrary disposition. . . . The [Commissioner] may properly
> accept some parts of the medical evidence and reject other parts, but she must
> *consider* all the evidence and *give some reason for discounting* the evidence she
> rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between

(i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[5]  Medical opinions on matters reserved

---

[5]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[6] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[6]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2.

Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V.     Discussion

In support of her motion for summary judgment, Plaintiff makes four distinct arguments. First, she argues that the ALJ erred in determining that her impairments did not meet or medically equal an impairment found in the Listing of Impairments. Doc. No. 13, p. 13. Second, she contends that the ALJ erred in concluding that her Lyme disease and Barrett's esophagitis were not "severe" impairments. *Id.*, pp. 13-14. Third, she asserts that the ALJ's residual functional capacity assessment was defective. *Id.*, pp. 14-15. Finally, she argues that the Commissioner failed to satisfy his burden at the fifth step of the sequential evaluation process of establishing the existence of jobs in the national economy consistent with the applicable vocational and residual functional capacity assessments. *Id.*, p. 15. The Court will address each of these arguments. Since Plaintiff advances no arguments concerning the ALJ's findings with respect to her exertional limitations, the Court assumes that only the findings with respect to Plaintiff's nonexertional impairments are presently in contention.

With respect to the severity determinations concerning Plaintiff's Lyme disease and Barrett's esophagitis, the Court notes that the second step of the sequential evaluation process is generally viewed as "a *de minimis* screening device to dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 549 (3d Cir. 2003). To surmount this hurdle, a claimant need only demonstrate the existence of something more than a "slight abnormality" (or a combination of slight abnormalities) which has no more than a minimal impact on his or her ability to work. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004).

Hence, in this context, the meaning of the word "severe" cannot be equated with the word's typical meaning in common parlance. The purpose of the second step of the sequential evaluation process is to dispose of claims in which a claimant fails to make a "reasonable threshold showing" that his or her impairment is "one which could conceivably keep him or her from working." *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1122 (1st Cir. 1986).

Plaintiff contends that her Lyme disease and Barrett's esophagitis have more than a minimal effect on her ability to meet the demands of a full-time job. Doc. No. 13, pp. 13-14. She argues that any doubts as to whether these impairments were severe should have been resolved in her favor. *Id.* A severity determination, however, must be viewed in its proper context. The Court notes that Plaintiff's applications for DIB and SSI were denied at the *fifth* step of the sequential evaluation process, not at the *second* step. R. 24-25. Furthermore, the ALJ expressly recognized that she was required to consider the combined effect of Plaintiff's impairments (including her non-severe impairments) in assessing her residual functional capacity. R. 19; 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The Court acknowledges that "because step two is to be rarely utilized as a basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow" when it is employed for *that* purpose. *McCrea*, 370 F.3d at 361 (internal citations omitted). Where the second step is not *utilized as a basis for the denial of benefits*, a more rigorous examination of the Commissioner's severity determination is unnecessary. *Newell*, 347 F.3d at 546 ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and *the sequential evaluation process should continue*.")(emphasis added).

Although it may be true that Plaintiff's Lyme disease and Barrett's esophagitis are severe, the ALJ's determinations to the contrary were inconsequential.  The regulations clearly require the Commissioner to consider a claimant's non-severe impairments in making a residual functional capacity determination.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Since Plaintiff was found to be suffering from other impairments which were deemed to be severe, her claims surmounted the *de minimis* hurdle erected by the second step of the sequential evaluation process.  Of course, the matter would be different if the ALJ had totally failed to consider Plaintiff's Lyme disease and Barrett's esophagitis.  Nevertheless, the opinion expressly states that the ALJ considered Plaintiff's non-severe impairments in assessing her residual functional capacity, and Plaintiff does not argue to the contrary.  R. 19.  Where the Commissioner finds at least one of a claimant's impairments to be severe and adequately incorporates any limitations resulting from both severe and non-severe impairments into his residual functional capacity assessment, the specific determinations at the second step concerning the non-severe impairments are of no dispositive significance.  There is no need for further discussion of that issue.

Plaintiff's argument with respect to the Listing of Impairments concerns Listings 12.04[7]

_____

[7]"12.04 *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A.  Medically documented persistence, either continuous or intermittent, of one of the following:
1.  Depressive syndrome characterized by at least four of the following:
a.  Anhedonia or pervasive loss of interest in almost all activities; or
b.  Appetite disturbance with change in weight; or
c.  Sleep disturbance; or

and 12.06.[8]  She evidently believes that she suffers from listed affective and anxiety-related

---

d.  Psychomotor agitation or retardation; or
e.  Decreased energy; or
f.  Feelings of guilt or worthlessness; or
g.  Difficulty concentrating or thinking; or
h.  Thoughts of suicide; or
i.  Hallucinations, delusions, or paranoid thinking; or
2.  Manic syndrome characterized by at least three of the following:
a.  Hyperactivity; or
b.  Pressure of speech; or
c.  Flight of ideas; or
d.  Inflated self-esteem; or
e.  Decreased need for sleep; or
f.  Easy distractability; or
g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
h.  Hallucinations, delusions or paranoid thinking; or
3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
B.  Resulting in at least two of the following:
1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence, or pace; or
4.  Repeated episodes of decompensation, each of extended duration;
OR
C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1.  Repeated episodes of decompensation, each of extended duration; or
2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."
20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

[8]"12.06 *Anxiety Related Disorders:* In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or

disorders.  Doc. No. 13, p. 13.  She is not specific as to *how* she supposedly qualifies for *per se* disability under these listings.  To "meet" a listing, a claimant must have a diagnosis found in the Listing of Impairments, and must provide medical reports documenting that his or her condition meets the criteria for a particular listing.  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  To "equal" a listing, a claimant must produce *medical* findings establishing that his or her unlisted impairment is equal in severity and duration to a listed impairment.  *Id.*  A claimant cannot qualify for benefits at the third step of the process under a theory of *per se* disability by

_____

compulsions in obsessive compulsive disorders.
     The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
     A. Medically documented findings of at least one of the following:
     1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
         a. Motor tension; or
         b. Autonomic hyperactivity; or
         c. Apprehensive expectation; or
         d. Vigilance and scanning;
or
     2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
     3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
     4. Recurrent obsessions or compulsions which are a source of marked distress; or
     5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
AND
     B. Resulting in at least two of the following:
     1. Marked restriction of activities of daily living; or
     2. Marked difficulties in maintaining social functioning; or
     3. Marked difficulties in maintaining concentration, persistence, or pace; or
     4. Repeated episodes of decompensation, each of extended duration.
OR
     C. Resulting in complete inability to function independently outside the area of one's home."
20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.06.

showing that the overall *functional* impact of his or her unlisted impairment (or combination of impairments) is the same as that of a listed impairment (or combination of impairments). *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). In order for a claimant to qualify as *per se* disabled at the equivalence step, he or she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

In her brief, Plaintiff argues that she meets the criteria for Listings 12.04 and 12.06 because her paranoia prevents her from getting along with her coworkers, and because her bipolar disorder interferes with her sleeping patterns. Doc. No. 13, p. 13. In making this argument, however, she fails to appreciate the nature of the equivalence inquiry. She makes no attempt to explain why her impairments meet or equal the *specific* criteria contained in Listings 12.04 and 12.06. It appears that she is trying to rely on a theory of *functional* equivalence, which provides no basis for a finding of *per se* disability.

The ALJ, of course, had a duty to identify the specific listings that she considered, and to explain why Plaintiff was not *per se* disabled thereunder. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120 (3d Cir. 2000). The ALJ identified the musculoskeletal disorders under Listing 1.00 and the mental disorders under Listing 12.00 as the most relevant impairments under which to evaluate Plaintiff's claims. R. 19. The determination that Plaintiff's mental impairments did not meet the criteria for the mental disorders found under Listing 12.00 (which include the affective disorders under Listing 12.04 and the anxiety-related disorders under Listing 12.06) was based on the assertion that her impairments did not result in "marked" or "extreme" limitations of functioning with respect to the "B" criteria. *Id.* Specifically, the ALJ concluded that Plaintiff had only "moderate" limitations in her activities of daily living, her

26

maintenance of social functioning, and her maintenance of concentration, persistence or pace. R. 21. In another portion of her brief, Plaintiff contends that she had "marked" limitations in these areas. Doc. No. 13, pp. 14-15. It is not clear whether Plaintiff is basing her argument regarding Listings 12.04 and 12.06 on the ALJ's findings with respect to the "B" criteria, or whether she believes that her impairments equal one or both of these listings for different reasons. In any event, however, the Court is convinced that the ALJ's residual functional capacity assessment is defective, and that a remand for further administrative proceedings is required for that reason.

In the portion of her opinion describing the basis for her residual functional capacity assessment, the ALJ made the following observations:

> The claimant testified that she has not used drugs since 2004 (Testimony). She has a history of drug abuse, including the use of cocaine, and alcohol abuse. Her hospital admission in December 2004 was triggered by binge drinking and occurred after she discontinued taking her anti-anxiety medication. She had an excellent response when treatment was resumed (Exhibit 1F). Following her discharge from treatment, she responded well to continuing treatment, her depression eased and her thoughts were no longer racing (Exhibit 2F). The claimant was using alcohol when she received treatment in an emergency room in June 2005 (Exhibit 17F) and was subsequently admitted for treatment (Exhibit 18F). Her hospital admission in July 2005 was triggered by a lapse in her use of prescribed medication and the use of cocaine (Exhibit 3F). Her admission in November 2005 was triggered by alcohol and drug abuse following an argument with her boyfriend (Exhibits 8F and 19F). At the time of her admission, she denied having used cocaine, even though the substance was detected in blood tests (Exhibit 9F). The use of cocaine on this occasion contradicts the claimant's testimony that she has not used illicit drugs since 2004 (Testimony). She was still admitting to alcohol use in August 2006 (Exhibit 15F). The claimant also received narcotic pain medication in February 2005 when she visited an emergency room and complained of lower back pain. At the time, she denied any history of drug abuse (Exhibit 17F).

> The Administrative Law Judge finds that the claimant's allegation of back pain is somewhat supported by objective findings, however the alleged severity of her pain is not consistent with the mild nature of the objective findings. Her history of substance abuse also suggests that her allegations of pain may be influenced by

her desire to obtain medications for non medical use. Her need for inpatient psychiatric treatment is frequently triggered by substance abuse and a failure to take prescribed medications. When the claimant's treatment is monitored, such as when she is hospitalized or regularly attending counseling sessions, she appears to function more effectively. And, treatment records show that she frequently does not keep her counseling sessions (Exhibit 10F), even though she recognizes that this is a problem and has asked a friend to remind her of appointments (Exhibit 3E).

R. 22-23. In his brief, the Commissioner argues that Plaintiff, *when not using cocaine*, has no more than moderate mental limitations of function. Doc. No. 11, pp. 6-8. In a footnote, he contends that Plaintiff would not be disabled *if she were to stop abusing cocaine. Id.*, p. 10, n. 2.

Relevant to the Court's analysis is § 105 of the Contract With America Advancement Act of 1996, which provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); Pub. L. No. 104-121, § 105; 110 Stat. 847, 853-854 (1996). The Commissioner has promulgated a framework for determining whether alcoholism or drug addiction is a "contributing factor material" to his conclusion that a particular individual is disabled. 20 C.F.R. §§ 404.1535, 416.935. The "key factor" in making a materiality determination of this kind is whether the claimant would still be found to be disabled if he or she were to stop abusing drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). Thus, in a case involving § 105, the Commissioner must determine which of a claimant's functional limitations would remain if he or she were to stop consuming drugs or alcoholic beverages. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

As several courts have noted, the administrative framework presupposes that a materiality determination under § 105 will be made only after a finding of disability has already been made

in accordance with the usual five-step sequential evaluation process. *Bustamante v. Massanari*, 262 F.3d 949, 954-955 (9th Cir. 2001). Indeed, some courts have gone as far as to hold that the Commissioner may not consider a claimant's abuse of drugs or alcohol *at all* prior to a finding that the claimant's functional limitations render him or her statutorily disabled. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)("Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability."). If the Commissioner wishes to rely on a claimant's abuse of drugs or alcohol as a basis for discounting established functional limitations, he must establish that such limitations would not exist but for the claimant's abuse of drugs or alcohol. *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 701-706 (W.D.Pa. 2002). In order to do so, he must point to some evidence which supports a finding that drug or alcohol abuse is *material* to the claimant's disability. *McNatt v. Barnhart*, 464 F.Supp.2d 358, 368-369 (D.Del. 2006).

In this case, it is not entirely clear whether the ALJ relied on Plaintiff's use of drugs or alcohol as a basis for denying her applications. The ALJ's analysis of Plaintiff's residual functional capacity is so interwoven with her discussion about Plaintiff's drug and alcohol abuse that meaningful judicial review concerning this issue is not possible. R. 22-23. The opinion contains no specific findings as to which (if any) of Plaintiff's functional limitations would remain if she were to stop abusing drugs and alcohol, or as to whether Plaintiff was able to sustain the demands of a full-time job given her existing limitations (including those directly attributable to drug or alcohol abuse). The ALJ's vague opinion, when coupled with the particular arguments raised in the Commissioner's brief concerning the application of § 105,

leads the Court to believe that the ALJ improperly chose to rely on Plaintiff's use of drugs or alcohol as a basis for denying her applications without proceeding in accordance with the framework established by the Commissioner's regulations. Indeed, the ALJ specifically noted that Plaintiff's need for inpatient psychiatric treatment was frequently triggered by substance abuse. R. 23. Under similar circumstances, courts have shown no hesitation in remanding administrative decisions for further proceedings before the Commissioner. *Cecil v. Astrue*, 554 F.Supp.2d 905, 906-908 (S.D.Iowa 2008); *Tagger v. Astrue*, 536 F.Supp.2d 1170, 1180-1181 (C.D.Cal. 2008); *Mathious v. Barnhart*, 490 F.Supp.2d 833, 849-850 (E.D.Mich. 2007); *LaPatra v. Barnhart*, 402 F.Supp.2d 429, 433 (W.D.N.Y. 2005); *Lindsay v. Barnhart*, 370 F.Supp.2d 1036, 1044 (C.D.Cal. 2005); *Welch v. Barnhart*, 355 F.Supp.2d 1008, 1017-1018 (E.D.Mo. 2005); *Williams v. Barnhart*, 338 F.Supp.2d 849, 862-863 (M.D.Tenn. 2004); *White v. Commissioner of Social Security*, 302 F.Supp.2d 170, 173-174 (W.D.N.Y. 2004); *Frederick v. Barnhart*, 317 F.Supp.2d 286, 293-294 (W.D.N.Y. 2004).

Where, as here, a claimant has both exertional and nonexertional limitations, there is a particularly important need for a clear residual functional capacity assessment. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). The ALJ determined that Plaintiff's nonexertional limitations did not preclude her from performing simple, routine, repetitive tasks not performed in a fast-paced production environment, involving only simple, work-related decisions, relatively few workplace changes, and only occasional interaction with supervisors, coworkers or the general public. R. 19. Nevertheless, she did not explain whether other potential limitations were discounted solely on the basis of Plaintiff's drug or alcohol abuse, or whether such additional limitations would remain if Plaintiff were to stop consuming drugs or alcoholic beverages. If the

Commissioner's representation to this Court is any indication, the administrative decision presently under review improperly accounted for Plaintiff's use of drugs and alcohol without enumerating specific findings as to the issue of materiality. Doc. No. 11, p. 10, n. 2 ("In the instant matter, Plaintiff *would* not be disabled *if* she stopped abusing cocaine.")(emphasis added).

Plaintiff makes the generic argument that the ALJ's conclusion that jobs exist in the national economy consistent with her residual functional capacity was not supported by substantial evidence. Doc. No. 13, p. 15. In light of the foregoing discussion concerning the residual functional capacity assessment in this case, the Court must agree. In order for a vocational expert's testimony to constitute "substantial evidence" that jobs consistent with a claimant's residual functional capacity exist in the national economy, the ALJ's hypothetical question must account for all of the claimant's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Since it has already been determined that the ALJ's residual functional capacity assessment is not "supported by substantial evidence" within the meaning of § 405(g), the ALJ's hypothetical question to Heckman based on that assessment was *ipso facto* defective. At the fifth step of the sequential evaluation process, the burden of proof is on the Commissioner, not on the claimant. *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005). The Commissioner cannot establish that jobs consistent with Plaintiff's residual functional capacity exist in the national economy without first assessing her residual functional capacity in a reliable manner.

It is, of course, the Commissioner's prerogative to determine how to proceed on remand. The Court notes, however, that consultative medical examinations are often helpful in ascertaining the precise limitations afflicting a claimant, or the extent to which such limitations

would remain in the absence of an extraneous factor like drug or alcohol abuse. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Consulting physicians often bring the impartiality and expertise in disability-related matters that treating physicians may lack. *Smith v. Bowen*, 664 F.Supp. 1165, 1169 (N.D.Ill. 1987). A reliable residual functional capacity assessment must be based on *specific* medical evidence. *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991). Beyond that, the Court expresses no opinion as to whether the ALJ's findings would be sufficiently supported by the evidence of record to warrant an affirmance if there had been no concerns present as to whether she improperly considered Plaintiff's drug and alcohol use without proceeding in accordance with the applicable administrative framework. It suffices to say that the Commissioner will have another opportunity to evaluate the evidence on remand, and the parties the opportunity to attempt to correct any deficiencies they believe may exist.[9]

## VI.     Conclusion

Because the record indicates that the ALJ may have relied on Plaintiff's use of drugs or alcohol as a basis for denying her applications for benefits without making the requisite materiality determinations, further administrative proceedings are required. A judicially ordered award of benefits is proper only where "the administrative record of the case has been fully developed and . . . substantial evidence in the record as a whole indicates that the claimant is

---

[9]Although the ALJ relied on treatment notes provided by Plaintiff's treating physicians in assessing her residual functional capacity, the only assessment of Plaintiff's ability to perform work-related activities referenced in the opinion was completed by a nonexamining physician. R. 23. Reliance on vague statements in treatment notes can be problematic, since positive remarks in the treatment context do not necessarily correlate with an individual's ability to perform work-related tasks. *Brownawell v. Commissioner of Social Security*, ___F.3d___, 2008 WL 5147953, at *4, 2008 U.S. App. LEXIS 24826, at *11-12 (3d Cir. 2008); *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000).

disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir. 1984).

That standard is not met here. A remand for further administrative proceedings, rather than an

award of benefits, is the appropriate remedy. *Stevens v. Commissioner of Social Security*, 484

F.Supp.2d 662, 668-669 (E.D.Mich. 2007).

Accordingly, the Court will deny the Commissioner's motion for summary judgment,

deny Plaintiff's motion for summary judgment insofar as it seeks an award of benefits, grant

Plaintiff's motion for summary judgment insofar as it seeks a remand for further administrative

proceedings, and remand the case for further proceedings consistent with this opinion. An

appropriate order will follow.

SO ORDERED this 19th day of February, 2009

s/ Arthur J. Schwab
United States District Judge

cc: All counsel of record